UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID C. JACKSON & ALEX HURT | Criminal No. 3:14cr250 (JBA)<br><br>July 29, 2015 |

**RULING ON DEFENDANTS' PRETRIAL MOTIONS**

Defendants David C. Jackson and Alex Hurt move [Doc. ## 69, 68] to sever their trials, Mr. Hurt makes various discovery-related motions [Doc. ## 65–68] and Mr. Jackson seeks [Doc. # 70] to preclude evidence of a prior conviction. For the reasons that follow, Defendants' motions are denied.

**I.     Background**

The Indictment [Doc. # 1] alleges that beginning in March 2010 through October 2014, Defendants Jackson and Hurt engaged in an "advance fee" scheme in which they misrepresented to victims seeking loans that they could help them secure millions of dollars in credit for various projects in exchange for paying an upfront fee. (Indictment ¶¶ 9–11.) Mr. Jackson used the aliases C. David Manns, Andrew Smithson, and Charles Jackson and held himself out as a director of Jalin Realty Capital Advisors ("Jalin") and American Capital Holdings, LLC ("ACH") while Mr. Hurt held himself out as an executive at Brightway Financial Group LLC ("Brightway"). (*Id.* ¶¶ 4–6.) Defendants misrepresented to their victims that they had access to numerous sources of funding, mostly located outside of the United States, and collected upfront application and commitment fees, which they represented would be used to perform due diligence and

secure millions of dollars in funding, when in fact the coconspirators used these fees to pay for personal expenses. (*Id.* ¶¶ 12–15.)

Defendants induced their victims to pay these fees by falsely telling their victims that they had successfully secured millions of dollars of loans for others in the past and that the upfront application fees were fully refundable when in fact "they would not and did not refund the vast majority of the upfront fees" and did not actually have access to capital to be loaned. (*Id.* ¶¶ 13, 16, 21–22.) In a further attempt to convince their victims that Jalin and ACH provided legitimate financing, Mr. Jackson provided prospective borrowers with the name and telephone number of separately charged coconspirator, Mariame Robinson-Cowan, as a reference and she falsely told prospective borrowers that she had received funding from Mr. Jackson and Jalin for a construction project, when in fact Ms. Robinson-Cowan had never received such financing or done such a project. (*Id.* ¶¶ 17–18.) In order to conceal the criminal activity charged in the conspiracy, on May 10, 2012, Mr. Hurt made a false statement to FBI agents in which he stated that he had never met with prospective borrowers in North Carolina when in fact he had such a meeting less than one week prior. (*Id.* ¶¶ 24, 25(I), 29–30.)

The Indictment charges Defendants with conspiracy to commit wire fraud, 18 U.S.C. § 1349 (Count One); wire fraud, 18 U.S.C. § 1343, and aiding and abetting, 18 U.S.C. § 2 (Counts Two through Ten)[1]; and Mr. Hurt with making a false statement to FBI agents, 18 U.S.C. § 1001 (Count Ten).

---

[1] Only Mr. Jackson is charged in Counts Two through Six and Ten, while Counts Seven through Nine charge Mr. Jackson and Mr. Hurt.

## II.    Discussion

### A.    Motion for Severance

Defendants both acknowledge that the charges against them were properly joined in the same indictment under Rule 8, but contend that severance is warranted. (Jackson Mot. Sever [Doc. # 69] at 4; Hurt Mot. Sever [Doc. # 68] at 6.) Rule 14 of the Federal Rules of Criminal Procedure provides that if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

There is a "preference, in the federal system, for the joint trial of defendants indicted together," *United States v. Yousef*, 327 F.3d 56, 149–50 (2d Cir. 2003) (quoting *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)), and thus severance under Rule 14 is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* Despite the risk of prejudice from joint trials, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

Defendant Jackson argues that severance is warranted for two reasons. First, he contends that he will be unfairly prejudiced by evidence of Defendant Hurt's charged false statement to the FBI and "[g]iven the nature of the allegations against Jackson," which also involve alleged acts of dishonesty, "no jury will be able to differentiate between

3

the evidence of Jackson's intent and the evidence of Hurt's alleged willingness to lie to anyone, including the federal government" and "the jury will be more likely to impute Hurt's more heinous dishonesty onto Jackson." (Jackson's Mot. at 7.)

However, as Jackson acknowledges (*id.* at 5 n.3, 6 n.4), Hurt's false statement is charged both as a separate substantive count and as an act intended to conceal and thereby further the charged conspiracy (Indictment ¶¶ 25(I), 29–30). Such a statement might be relevant at a separate trial of Jackson "to prov[e] the nature and scope of the conspiracy in which both were, to differing degrees, involved," *United States v. Spinelli*, 352 F.3d 48, 55–56 (2d Cir. 2003), and statements made during and in furtherance of a conspiracy are admissible provided that both the declarant and the person against whom the statement is offered belonged to the same conspiracy, *see* Fed. R. Evid. 801(d)(2)(E); *United States v. Stewart*, 433 F.3d 273, 291 (2d Cir. 2006) ("[T]he challenged statements are part and parcel of co-conspirators' statements made in the course of and in furtherance of Defendants' conspiratorial plan to mislead investigators" and are admissible under Fed. R. Evid. 801(d)(2)(E) and the Confrontation Clause.). Therefore, Mr. Hurt's alleged statements made in furtherance of the charged conspiracy would likely be admissible against Mr. Jackson at a separate trial and when offered at a joint trial are "neither spillover nor [unfairly] prejudicial," *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993), and provide no basis for severance.

Next, Defendant Jackson contends that his defense at trial will be that "Hurt manipulated Jackson into Hurt's criminal conduct" and Jackson "is actually Hurt's victim" and that this defense can only be advanced by Jackson "break[ing] his constitutionally-mandated silence and testify[ing], subjecting himself to cross

4

examination from not only the Government, but also Hurt's lawyer."[2] (Jackson Mot. at 8.) Of course, as Jackson recognizes, if Jackson chooses to testify in his own defense, he will be waiving his constitutional right to remain silent whether or not he is tried with Mr. Hurt. That Mr. Jackson will face added cross-examination by Mr. Hurt's attorney in a joint trial, who Mr. Jackson contends will endeavor to prove that Mr. Hurt rather than Mr. Jackson was the true victim in this charged scheme, does not persuade the Court that severance is warranted. In *Zafiro*, the Supreme Court held that severance was not required merely because the defendants asserted "mutually antagonistic defenses" and rejected the arguments that because the "two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt." *Id.* at 540. The Court reasoned that jury instructions admonishing jurors to separately consider the guilt and innocence of each defendant were sufficient to cure any potential risk of prejudice. *Id.*

---

[2] Defendant Jackson cites a 2012 lawsuit filed by his company, ACH, against several individuals, including Defendant Hurt, for breach of contract and fraud, and argues that "the lawsuit illustrates" that "there was no common plan or scheme" between him and Hurt. (Jackson's Mot. at 8.) While this argument appears to evoke the language of joinder analysis where offenses must be "part[] of a common scheme or plan," Fed. R. Crim. P. 8(a), Defendant Jackson concedes that the charges against him and Defendant Hurt were properly joined (Jackson's Mot. at 4). This lawsuit has no bearing on the severance analysis because Defendant Jackson does not contend that it is related to the conduct charged in the Indictment nor does he explain how an apparently unrelated business dispute between the parties could compromise one of his specific trial rights. *See Zafiro*, 506 U.S. at 539.

Mr. Hurt likewise argues that severance is justified because he intends to argue that he "was himself a victim of Mr. Jackson's alleged conduct" (Hurt's Mot. at 1), but as discussed above, a mutually antagonistic defense is not sufficient on its own to compel severance and Mr. Hurt does not demonstrate how his specific trial rights would be compromised in a joint trial or why limiting instructions would not be sufficient to cure any potential prejudice. Defendant Hurt suggests that "the complexity of the case" could make it difficult for the "jury to compartmentalize the evidence" and make individual assessments of guilt. (*Id.* at 2.) However, there does not appear to be anything particularly complicated about the allegations here. The Government alleges that Mr. Hurt and Mr. Jackson both defrauded potential borrowers; some of these transactions involved both Defendants, some just Mr. Jackson. With proper limiting instructions, a jury is readily capable of making this distinction. *See Zafiro*, 506 U.S. at 540.

Next, Mr. Hurt contends that "[t]o the extent that the government's trial evidence is consistent with the discovery materials disclosed, it appears that much of its case-in-chief as to other charged defendants would be inadmissible at a trial involving Mr. Hurt alone," such as "a sizeable number of intercepted communications to which he was not a party or . . . that pre-date his claimed entrance in the charged conspiracy." (Hurt's Mot. at 3.) Defendant Hurt does not provide any details about the evidence to which he refers and on this record his argument is unavailing. Severance is not warranted merely because there are "differing levels of culpability and proof" between coconspirators, *Spinelli*, 352 F.3d at 55 (quoting *United States v. Carson,* 702 F.2d 351, 366–67 (2d Cir. 1983)), and "[e]ven 'joint trials involving defendants who are only marginally involved alongside

6

those heavily involved are constitutionally permissible,'" *id.* (quoting *United States v. Locascio,* 6 F.3d 924, 947 (2d Cir. 1993).[3]

Because Defendants have not identified any specific trial rights that would be compromised in a joint trial or why jury instructions would not be sufficient to cure any potential unfair prejudice, their motions for severance are denied.

### B.   Defendant Jackson's Objection to the Government's 404(b) Notice

Defendant Jackson objects [Doc. # 70] to the Government's Rule 404(b) Notice [Doc. # 78] and its intent to use "evidence pertaining to" Mr. Jackson's 2006 guilty plea in the Western District of Pennsylvania to bank fraud and money laundering.[4] (Gov't's Opp'n to Def.'s Obj. [Doc. # 74] at 1.) Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a

---

[3] The Second Circuit has noted that "[t]here are, of course, cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice." *Spinelli*, 352 F.3d at 55. Given that Defendants Hurt and Jackson are alleged to be roughly culpable to the same extent and Defendant Hurt has not elaborated on what evidence he contends would be admissible against Jackson but not him, he has not met his burden of showing that severance is warranted at this time. However, the Court recognizes that it "'has a continuing duty at all stages of the trial to grant a severance if prejudice does appear.'" *Rittweger*, 524 F.3d at 179 (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

[4] Neither party discusses the factual background of the prior conviction, but the public docket for the case reveals that Mr. Jackson pled guilty to participating in "a scheme to defraud lenders" by obtaining loans for properties that were sold in sham transactions at inflated prices. *United States v. Lavelle Snead*, 2:05cr185 (MBC) (W.D. Penn.), Indictment [Doc. # 1] ¶¶ 15–16, Judgment as to David C. Jackson [Doc. # 201]. Mr. Jackson was accused of having "requested appraisals on some of the properties, using the fraudulently inflated sales price which resulted in inflated appraised values" and then submitting false loan applications. *Snead* Indictment ¶¶ 17, 23–28, 49–50.

7

person's character in order to show that on a particular occasion the person acted in accordance with the character," but may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The Second "Circuit 'follows the inclusionary approach, which admits all other act evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402.'" *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013) (quoting *United States v. Curley,* 639 F.3d 50, 56 (2d Cir. 2011)). In determining the admissibility of evidence under Rule 404(b), a district court must consider whether: (1) the prior crimes evidence is "'offered for a proper purpose'"; (2) the evidence is "relevant to a disputed issue;" (3) the probative value of the evidence is "substantially outweighed by its potential for unfair prejudice pursuant to Rule 403;" and (4) the effectiveness of an appropriate limiting instruction. *Id.* (quoting *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009)).

Defendant Jackson concedes that "the Government is not offering evidence of Jackson's prior conviction 'solely' for the purpose [of] showing the defendant's bad character" and thus "does not object on this basis," but rather objects that the evidence is not relevant and it is unfairly prejudicial because evidence of prior fraud conviction will lead the jury to consider the evidence as showing Defendant's propensity to engage in fraud. (Def. Obj. at 3–6.) The Court, however, concludes that the Government has shown a number of purposes for which the 2006 conviction is admissible.

First, Defendant Jackson's defense at trial will be that he lacked criminal intent because "Hurt manipulated Jackson into Hurt's criminal conduct" and Jackson "is

actually Hurt's victim." (Jackson's Mot. Sever at 8.) Thus, Mr. Jackson's criminal intent to commit fraud is a factual issue to which his prior conviction for a fraudulent financial transaction is relevant. For example in *United States v. Zedner*, the defendant was charged with attempting to defraud financial institutions using counterfeit bonds and claimed that he lacked criminal intent because he did not know that the bonds were counterfeit. 401 F.3d 36, 39, 49 (2d Cir. 2005) *rev'd on other grounds,* 547 U.S. 489 (2006). The Second Circuit held that the district court properly allowed evidence that the defendant had previously defrauded two victims when he sought to wrongfully take title to their homes after they sought his help in seeking financing, reasoning that in light of the defendant's defense, "[t]estimony about his other fraudulent acts tended to prove [the defendant's] financial sophistication, his ability to execute complex schemes, and his ability to form intent to defraud." *Id.* at 49–50.

Likewise, here Defendant Jackson's prior conviction for a financial fraud could be relevant to rebut his argument that he was unaware of Defendant Hurt's fraudulent intent based on the theory that Jackson's "knowledge may be inferred from the improbability of [his] repeated claims of innocent involvement in" fraudulent schemes. *United States v. Oshatz*, 912 F.2d 534, 542 (2d Cir. 1990); *see also United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) ("Ward contended at trial that he neither knew about nor intended to facilitate any securities or wire fraud by producing false audit reports. Ward's own defense strategy therefore made evidence of his previous participation in a substantially similar scheme highly probative. That Ward previously prepared false audit reports to facilitate a securities fraud scheme tends strongly to belie his assertion that he did not understand the nature of the scheme for which he was being prosecuted.").

Second, as the Government notes, Defendant's failure to disclose his financial dealings and travel to his probation officer could suggest a consciousness of guilt, i.e., that Mr. Jackson was aware of the illegality of his conduct and thus did not report it as required to a probation officer who was supervising him for a conviction arising from similar conduct because he knew it would arouse suspicion and was unlawful.[5] *See United States v. Pirgousis*, 290 F. App'x 388, 391 (2d Cir. 2008) ("[C]riminal intent may be established through circumstantial evidence . . . include[ing] acts that exhibit a consciousness of guilt . . . ." (quoting *United States v. Gordon,* 987 F.2d 902, 906–07 (2d Cir. 1993)).

Finally, as the Government contends, the 2006 conviction could also be relevant as "direct evidence" of the charged fraud in that "Jackson expended over $11,000 (including victims' money) . . . to identify and conceal negative information" about him, which "helped to further the scheme and entice more clients." (Gov't's Opp'n at 13.) "[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) . . . if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez,* 110 F.3d 936, 942 (2d Cir. 1997)). If the Government can establish that Defendant Jackson

---

[5] The Government contends that Defendant Jackson's status as a supervisee is also relevant because it "establishes the interstate use of the wires" needed for a wire fraud conviction because "that Jackson was not permitted to travel outside of the approved judicial districts without permission provides circumstantial evidence that his communications with victim-borrowers and potential victim-borrowers . . . occurred by use of interstate wire communications." (Gov't's Opp'n at 7.) The Court is totally unpersuaded by this argument.

spent large amounts of his clients' money on reputation-scrubbing services instead of using it to obtain financing for them, this would be direct evidence of Defendant's conversion and fraudulent use of their money and could belie his defense that he intended to use their money to obtain loans.

Although the Court has concluded that evidence of Defendant's prior conviction is relevant on a number of points, it would not admissible if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. While all evidence of prior convictions for similar conduct carries a risk that a jury will consider it for an improper propensity purpose resulting in unfair prejudice to a defendant, Rule 404(b) recognizes numerous permissible purposes for such evidence and "[u]nfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." 2-404 Weinstein's Federal Evidence § 404.2. With a proper limiting instruction, the jury will be able to differentiate between the permissible and impermissible uses of the prior conviction, *see United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (noting that a limiting instruction to the jury can cure the unfairly prejudicial impact of 404(b) evidence), and the Court therefore concludes that the probative value of the prior conviction is not substantially outweighed by its unfairly prejudicial impact and Defendant's objection is overruled.

    **C.**    **Defendant Hurt's Discovery Motions**

Defendant Hurt has filed three discovery motions that the Government contends are all moot and Defendant has not subsequently disputed the Government's characterization. In his "Motion [Doc. # 65] in Limine for Disclosure of Expert Witness of [sic] to Preclude Inadequately Disclosed Witness," Defendant Hurt seeks disclosure of the

Government's trial expert and fact witnesses and to preclude the testimony of any inadequately disclosed witnesses pursuant to Fed. R. Crim P. 16(a)(1)(G) and the District's Standing Order on Discovery, Loc. R. Crim. App'x (A)(6). The Government represents that it is aware of its obligations under these provisions and has already disclosed to Defendants an expert witness, George Mason School of Law Associate Professor James E. Byrne, whom it intends to call at trial. (Gov't's Resp. to Hurt's Mots. [Doc. # 75] at 1–2.) Defendant Hurt has filed no motion directed at this expert to date. Therefore, this motion is denied as moot.

Defendant Hurt's Motion [Doc. # 66] for Disclosure of Impeaching Information seeks exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Here too the Government responds that it has already disclosed to Defendant all *Brady* and *Giglio* material of which it is aware and will make supplemental disclosures as required. (Gov't's Resp. at 4–5.) This motion is therefore denied as moot.

Defendant's "Motion [Doc. # 67] in Limine RE: 'Officer Expert' Testimony" seeks to preclude federal agents from interpreting at trial "the meaning of certain words or concepts [r]elating to mortgages, investments or other government evidence." As the Government notes, this case does not involve mortgages or investments but rather fees allegedly charged in connection with loans. Nevertheless, while the Government intends to call an FBI agent, who while acting undercover met with Defendant Hurt and heard his "pitch," the Government represents that it will not seek to qualify the agent as an expert but rather he will "merely be testifying as to what he was told and his understanding of what Hurt was telling him."[6] (Gov't's Opp'n at 7.) Under Fed. R. Evid. 701, a lay witness may testify to opinions that are

---

[6] Therefore, *United States v. Mejia*, 545 F.3d 179, 188 (2d Cir. 2008), cited by Defendant, which involved testimony of a police officer who was offered as an expert under Rule 703, is inapposite.

12

"(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." A participant to a conversation may generally testify as to the conversation's meaning where it will aid the jury. *See United States v. Skelly*, 442 F.3d 94, 100 (2d Cir. 2006) ("[W]hile Gross complains that the district court improperly admitted two witnesses' testimony as to their understanding of the meaning of various statements Gross made in the course of conversations with them, both witnesses had first-hand knowledge of the conversations and their testimony may have aided the jury's understanding of those conversations."). Based on the Government's representation that it will only seek to elicit testimony from the FBI agents permitted by Fed. R. Evid. 702, Defendant's motion is denied as moot.

### III.   Conclusion

For the reasons set forth above, Defendants' Motions [Doc. ## 69, 68] to sever their trials are DENIED; Defendant Jackson's Objection [Doc. # 70] to the admission of Rule 404(b) evidence is OVERRULED; and Defendant Hurt's discovery motions [Doc. ## 65–68] are DENIED as MOOT.

IT IS SO ORDERED.

           /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of July, 2015.