UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES<br><br>v.<br><br>DAVID JACKSON and ALEX HURT | Crim. No. 3:14cr250 (JBA)<br><br>January 4, 2016 |
|---|---|

**RULING ON DEFENDANTS' POST-TRIAL MOTIONS**

On September 29, 2015, after a nine-day jury trial, Defendant David Jackson was convicted of one count of conspiracy, in violation of 18 U.S.C. § 1349, and nine counts of wire fraud, in violation of 18 U.S.C. § 1343, and Defendant Alex Hurt was convicted of one count of conspiracy, in violation of 18 U.S.C. § 1349, three counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of false statements, in violation of 18 U.S.C. 1001. (*See* Jury Verdict [Doc. # 154].) Defendant Hurt now moves [Doc. # 165], pursuant to Federal Rule of Criminal Procedure 33, for a new trial,[1] on the grounds that: (1) the false statement he was convicted of making was not, as a matter of law, material because the agents to whom he made the statement knew it to be false; and (2) the Court's refusal to sever his trial from Mr. Jackson's trial deprived Mr. Hurt of a fair trial. Mr. Jackson

---

[1] Mr. Hurt's motion is entitled "Defendant Alex Hurt's Rule 29(c) Motion for Judgment of Acquittal and Rule 33 Motion for a New Trial," and it discusses, in the 'Standard of Review' section, the standards of review for both Rules 29 and 33. However, neither of the arguments Mr. Hurt advances in his motion appear to be arguments for a judgment of acquittal. Mr. Hurt's first claim, with regard to the false statements count, explicitly references Rule 33; his second claim, with regard to severance, references neither Rule 29 nor Rule 33, but does not present appropriate grounds for a Rule 29 motion. The Court therefore considers Mr. Hurt's motion, the title notwithstanding, to be a motion for a new trial under Rule 33.

moves [Doc. # 163] for a judgment of acquittal on the basis that the Government failed to prove that he intended to harm his victims. In addition, Mr. Jackson, like Mr. Hurt, seeks [Doc. # 166] a new trial because his trial should have been severed from Mr. Hurt's trial. Mr. Jackson also argues that his prior conviction and his tax records should not have been admitted. For the following reasons, Mr. Hurt's and Mr. Jackson's motions are denied.

I. **Background**

The parties' familiarity with the facts of this case is presumed. Briefly, Defendants David Jackson and Alex Hurt were convicted of conspiring to commit and committing wire fraud. Mr. Jackson, and to a lesser extent, Mr. Hurt, through the entities Jalin Realty Capital Advisors, American Capital Holdings, and Brightway Financial Group, induced victims to pay millions of dollars in fees in order to secure loans of substantial amounts of money. None of the promised loans ever materialized, and few of the victims were refunded any amount of fees, in spite of promises by Mr. Jackson and Mr. Hurt that fees would be fully refunded if the loans did not fund.

Mr. Hurt was additionally convicted of False Statements, arising out of his May 10, 2012 representation to FBI agents during a proffer session that he had never met with anyone in North Carolina who was looking for loan funding. In fact, Mr. Hurt had met with undercover FBI agent Steve West, who was posing as a potential borrower, in North Carolina less than a week earlier.

II. **Legal Standard**

"A Rule 29 motion [for a judgment of acquittal] should be granted only if the district court concludes there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Irving*, 452 F.3d 110, 117 (2d

2

Cir. 2006) (internal quotations omitted). "The Court must view the evidence presented at trial in the light most favorable to the Government, and draw all reasonable inferences in its favor." *United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008). "[I]t is well settled that 'Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Id.* at 99 (quoting *United States v. Guandagna*, 183 F.3d 122, 129 (2d Cir. 1999)). "The Court must give full play to the right of the jury to determine credibility." *Id.* "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a heavy burden." *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008) (internal quotations and citations omitted).

Under Federal Rule of Criminal Procedure 33, the Court has the discretion to grant a new trial "if the interest of justice so requires," particularly where there is "a real concern that an innocent person may have been convicted." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005). "In the exercise of its discretion, the court may weigh the evidence and credibility of witnesses," *Cote*, 544 F.3d at 101, but "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment," *id.* (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). While courts have broader discretion to grant a new trial under Rule 33 than to grant an acquittal under Rule 29, "courts must nonetheless exercise Rule 33 authority sparingly and in the most extraordinary of circumstances." *Id.*

III.   Discussion

   A. **Motion for Judgment of Acquittal**

Defendant Jackson contends that he is entitled to a judgment of acquittal because "[t]he Government did not present sufficient evidence of [his] fraudulent intent," which was "[t]he critical element in all ten Counts against [him]." (Jackson's Mot. for J. Acquittal [Doc. # 163] at 4.)

In order to prove a defendant guilty of wire fraud, the government must "establish that the defendant had fraudulent intent or a conscious knowing intent to defraud and that some harm or injury to the property rights of the victim was contemplated." *United States v. McGinn*, 787 F.3d 116, 122 (2d Cir. 2015) (internal quotation marks omitted). "Misrepresentations amounting only to a deceit are insufficient. . . because the deceit must be coupled with a contemplated harm to the victim." *United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015) (internal quotation marks omitted). However, "[w]hen the necessary result of the defendant's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." *United States v. Romano*, 794 F.3d 317, 335 (2d Cir. 2015) (internal quotation marks and alterations omitted). Thus, "it is not necessary that a defendant intend that his misrepresentation actually inflict a financial loss—it suffices that a defendant intend that his misrepresentations induce a counterparty to enter a transaction without the relevant facts necessary to make an informed economic decision." *Binday*, 804 F.3d at 579.

In this case, Mr. Jackson concedes that "the Government established that [he] made some misrepresentations that may have amounted to deceit," but he insists that the Government offered "no direct evidence" of intent. (Jackson's Mot. for J. Acquittal at 4.)

4

As a preliminary matter, as this Court instructed the jury, and as the Second Circuit "ha[s] repeatedly emphasized, . . . 'intent to defraud' can be established by circumstantial evidence." *United States v. Couto*, 383 F. App'x 30, 33 (2d Cir. 2010) (citing *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)); *see Romano*, 794 F.3d at 335 ("A defendant's fraudulent intent may be proven entirely through circumstantial evidence."). Moreover, the Government here presented ample evidence from which a reasonable jury could have found intent to defraud.

The jury heard testimony from ten individuals who had paid Mr. Jackson sums of money ranging from $35,000 to $100,000, in addition to up to $1 million in escrow, to secure funding for various ventures. Mr. Jackson represented to every one of these individuals that if they did not receive their funding, they would be entitled to a full refund, and that no money would leave the escrow account without their explicit consent. (*See, e.g.*, Jackson Testimony, Ex. 1 to Gov't's Opp'n [Doc. # 174] at 66–67, 73–74.) Notwithstanding those representations, only one of the victims received so much as a partial refund, though none of the victims received their funding. (*See id.* at 71.) Further, individuals who never agreed to the release of their escrow funds testified that the funds were nonetheless released to others. The Government presented evidence to show that at least some of the released escrow funds were placed directly into an American Capital Holdings' account and used for Mr. Jackson's personal expenses.

The Government also submitted evidence that Mr. Jackson had made other misrepresentations to the victims to induce them to do business with him, and many victims stated that they would not have done business with Mr. Jackson had they known the truth about these misrepresentations. Several victims testified that Mr. Jackson had

5

told them that he had successfully made "many" loans in the past. Michael Healy, for example, testified that Mr. Jackson had stated to him that he "did a loan every month in the amount of $100 million." Dale McClean testified that Mr. Jackson represented to him that he had "closed tens of deals for millions of dollars." Valerie Hill-Rawls likewise testified that Mr. Jackson had told her that he had successfully closed loans in the past, and Mitchell Koep stated that Mr. Jackson had represented to him that he had closed millions of dollars of loans. In fact, as Mr. Jackson admitted at trial, he had never successfully funded a loan.

The Government additionally offered evidence that Mr. Jackson had provided prospective clients with a reference from co-conspirator Mariame Robinson-Cowan. The evidence showed, and Ms. Robinson-Cowan testified, that Mr. Jackson paid her to tell prospective clients that she had obtained large loans from Mr. Jackson although this was not true. Indeed, Mr. Jackson himself testified that Ms. Robinson-Cowan's statements to prospective clients "might have been an exaggeration" and that in fact, he had never closed "one of these loans." (*Id.* at 73, 74.)

Finally, Mr. Jackson admitted that he used several aliases in his business dealings, alternatively calling himself C. David Mann, Andrew Smithson, and Charles Jackson. Mr. Jackson testified that he used these names for "profiling" his company, i.e., making it seem bigger than it was. The jury, however, could reasonably have drawn a different conclusion from Mr. Jackson's use of aliases—namely, that he did not want prospective clients to know about his criminal record. Indeed, Kelly Thoma testified that after googling "Smithson" and "American Capital Holdings," she had learned that "Charles Jackson" had been to jail. She asked "Mr. Smithson" if "Charles Jackson" was still

6

involved in the business, and he emphatically assured her that "Charles Jackson" was no longer affiliated with the business and was in jail "where he belonged."

Mr. Jackson contends, however, that the evidence submitted at trial is "just as reasonably construed as evidence of [his] good faith." (Mot. for J. Acquittal at 8.) In so arguing, Mr. Jackson misconstrues the standard for granting a judgment of acquittal. In considering a motion under Rule 29(c), the "Court must view the evidence presented at trial in the light most favorable to the Government, and draw all reasonable inferences in its favor." *Cote*, 544 F.3d at 98. Doing so here, the Court finds ample evidence from which a reasonable jury could have found that Mr. Jackson acted with fraudulent intent.

Accordingly, Defendant Jackson has not met his heavy burden under Rule 29 of establishing that there was insufficient evidence upon which the jury could have relied to find him guilty, and thus a judgment of acquittal is not warranted in this case.

### B. Motions for New Trial

#### 1. False Statements

In his motion for a new trial, Mr. Hurt first argues that he is entitled a new trial on Count 11 because the evidence adduced at trial was insufficient to establish that he was guilty of making false statements. Defendant Hurt does not contend that the statement he made to FBI agents—that he had not met with anyone in North Carolina who was looking for loan funding—was true; rather, he asserts that "[t]he verdict as to Count 11 (False Statement) ought to be set aside as the statements allegedly made were not material." (Hurt Mot. for New Trial [Doc. # 165-1].)

In order to prove that a defendant violated 18 U.S.C. § 1001(a)(2), "the Government must prove that a defendant (1) knowingly and willfully, (2) made a

7

*materially* false, fictitious, or fraudulent statement, (3) in relation to a matter within the jurisdiction of a department or agency of the United States, (4) with knowledge that it was false or fictitious or fraudulent." *United States v. Coplan*, 703 F.3d 46, 78 (2d Cir. 2012). "[A] statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012) (internal citations, quotation marks, and alterations omitted).

Here, Mr. Hurt argues that because the FBI agents to whom he made his false statement knew that the statement was false, it was not, as a matter of law, material. (*Id.* at 4.) Mr. Hurt, however, offers no caselaw in support of this novel proposition, and as the Government observes, it is not consistent with existing authority.

The Supreme Court has noted, in addressing the argument Mr. Hurt advances here—"that a *disbelieved* falsehood" does not violate § 1001—that "making the existence of th[e] crime [of false statements] turn upon the credulousness of the federal investigator (or the persuasiveness of the liar) would be exceedingly strange; such a defense of the analogous crime of perjury is certainly unheard of." *Brogan v. United States*, 522 U.S. 398, 402 (1998). Likewise, the Second Circuit held in *Adekanbi* that a defendant's lie about his identity during a proffer session was material even though the agents to whom he had lied knew he was lying. *See* 675 F.3d at 183.

Judge McMahon's discussion in *United States v. Santiago* is instructive:

> [T]he test of materiality is objective, not subjective; that is, a statement is material if it is capable of influencing a decision by a decision-making body even if the body did not in fact rely on the statement. The particular

8

> decisionmaker can even have thought that the statement was false at the time it was made, as was indubitably the case here. His subjective belief in the particular circumstances of a particular case is irrelevant. The only question is whether the statement was capable of influencing a reasonable decision-maker.

No. 13cr39 (CM), 2014 WL 4827883, at *5 (S.D.N.Y. Sept. 26, 2014); *see also United States v. Stern*, No. 03 CR. 81 (MBM), 2003 WL 22743897, at *2 (S.D.N.Y. Nov. 20, 2003) ("A conviction for making a false statement to an FBI agent will be affirmed even if the evidence shows that the agent to whom the statement was made was aware at the time that the statement was false and therefore did not believe it."); *United States v. Fondren*, 417 F. App'x 327, 336 (4th Cir. 2011) ("We also reject Fondren's argument that the statements were not material because the FBI investigators already knew the answers to the questions they asked him. It is well established law in this Circuit that a finding of materiality is not dependent upon whether the fact finder was actually influenced by a defendant's false statements." (internal quotations omitted)); *United States v. Whitaker*, 848 F.2d 914, 916 (8th Cir. 1988) ("The issue is whether the statements, viewed alone, were capable of influencing the function of the FDIC. It is irrelevant what the agent who heard the statement knew at the time the statement was made. A false statement can be material even if the agent to whom it is made knows that it is false.").

Because Mr. Hurt's lie had a natural tendency to influence and was capable of influencing the FBI's decision regarding whether it should charge Mr. Hurt in connection with the loan conspiracy and its decision regarding whether or not to utilize Mr. Hurt as a cooperating witness, it was a material statement, whether or not the FBI believed it. The Court therefore declines to order a new trial as to Count 11.

### 2. Refusal to Sever

Both Defendants argue that they were deprived of a fair trial because of the Court's refusal to sever their trials. Defendant Jackson contends that he was prejudiced by Mr. Hurt's "antagonistic defense," alleging that he was a victim of Mr. Jackson's, and by Mr. Hurt's false statement to FBI agents. (Jackson Mot. for New Trial [Doc. # 166] at 4.) Defendant Hurt asserts that he was also prejudiced by the defendants' antagonistic defenses, as well as by Mr. Jackson's prior conviction of bank fraud, and the weight of the evidence against Mr. Jackson. (Hurt Mot. for New Trial t 5–6.)

Rule 14 of the Federal Rules of Criminal Procedure provides that if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). There is a "preference, in the federal system, for the joint trial of defendants indicted together," *United States v. Yousef*, 327 F.3d 56, 149–50 (2d Cir. 2003) (quoting *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)), and thus severance under Rule 14 is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id*. Despite the risk of prejudice from joint trials, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*.

a. **Antagonistic Defenses**

Where, as here, a "challenge to [a] denial of severance is premised on a claim that two defenses were antagonistic, a defendant satisfies his burden of showing substantial prejudice only if it can be said that the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) (internal quotation marks and citations omitted). "The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance." *Id.*; *see United States v. Phillips*, 609 F. App'x 27, 29 (2d Cir. 2015) ("[A] 'trial need not be severed simply because codefendants raise conflicting defenses.'" (quoting *United States v. Blount,* 291 F.3d 201, 209 (2d Cir. 2002)).

Here, Mr. Hurt testified that he was not Mr. Jackson's co-conspirator but rather his victim. As this Court held with respect to the parties' pre-trial motions for severance, however, this fact alone

> does not persuade the Court that severance [wa]s warranted. In *Zafiro*, the Supreme Court held that severance was not required merely because the defendants asserted "mutually antagonistic defenses" and rejected the arguments that because the "two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt." [506 U.S.] at 540. The Court reasoned that jury instructions admonishing jurors to separately consider the guilt and innocence of each defendant were sufficient to cure any potential risk of prejudice. *Id.*

(Ruling on Defs.' Pretrial Mots. [Doc. # 88] at 3.)

In this case, the Court instructed the jury:

11

> There are two defendants on trial before you. You must, as a matter of law, consider each count of the indictment and each defendant's involvement in that count separately, and you must return a separate verdict on each defendant for each count in which he is charged. You must consider each count separately and return a separate unanimous verdict of "not guilty" or "guilty" as to each count and each defendant. Whether you find a defendant not guilty or guilty on one count must not affect your verdict as to another count or another defendant.

These instructions admonishing jurors to separately consider the guilt and innocence of each defendant were sufficient to cure the risk of prejudice.

### b. Mr. Hurt's False Statements and Mr. Jackson's Prior Conviction

Defendants additionally contend that they were prejudiced by the Court's decision not to sever their cases because some evidence was admitted against each defendant that did not bear on the other defendant. Mr. Jackson claims that he was prejudiced by the False Statements charge against Mr. Hurt because Mr. "Hurt, who alone was charged with lying to the FBI, committed acts that cast him and anyone 'in the same boat' with him as a massive liar." (Jackson Mot. for New Trial at 4.) Mr. Hurt, for his part, asserts that he was prejudiced by the evidence concerning Mr. Jackson's prior conviction of bank fraud because "[i]n the jury's eyes, notwithstanding the charge, he was tarred with Jackson's prior conviction." (Hurt Mot. for New Trial at 5.)

However, "the fact that evidence may be admissible against one defendant but not another" does not necessarily require a severance, "especially where the charges against the defendants are straightforward and the jury is properly instructed to consider the evidence against each defendant separately." *United States v. O'Connor*, 650 F.3d 839, 858–59 (2d Cir. 2011) (internal quotation marks and citations omitted). In order to satisfy the "'extremely heavy burden'" of demonstrating prejudicial spillover, a "defendant

12

must show prejudice so severe that his constitutional right to a fair trial will be violated." *United States v. Ferguson*, 478 F. Supp. 2d 220, 247 (D. Conn. 2007) (quoting *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988)). "The defendant must also show that a limiting instruction will be insufficient." *Id.* (citing *United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999)).

Neither defendant has made such a showing here. The Court instructed the jury to "consider each count of the indictment and each defendant's involvement in that count separately" and that "[e]vidence admitted solely against one defendant may be considered only as against that defendant and may not in any respect enter into your deliberations on any other defendant." Neither Defendant has put forth a persuasive reason for finding that limiting instruction insufficient.

### c. Weight of Evidence against Mr. Jackson

Mr. Hurt's final argument regarding severance is that he was prejudiced by "[t]he number of Mr. Jackson's victims, the lies which he told them, his many alias's, the extent of the money and loss attributable to his fraud, and his incredible testimony at trial." (Hurt Mot. for New Trial at 6.) In other words, Mr. Hurt contends that he was prejudiced by the differing levels of culpability alleged and proof presented against Mr. Jackson relative to him.

The Second Circuit has, however, repeatedly "observed that 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'" *United States v. Corsey*, 512 F. App'x 6, 7 (2d Cir. 2013) (quoting *United States v. Chang An–Lo,* 851 F.2d 547, 557 (2d Cir. 1988)). Indeed, "[e]ven 'joint trials involving defendants who are only marginally involved alongside

13

those heavily involved are constitutionally permissible.'" *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (quoting *United States v. Locascio,* 6 F.3d 924, 947 (2d Cir. 1993)). "There are, of course, cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice." *Id.* But this is not such a case, particularly because, as discussed above, the Court "explicitly instructed the jury to consider the defendants individually." *Id.*

For the foregoing reasons, to the extent Defendants challenge the Court's decision denying severance of their cases in their motions for a new trial, their motions are denied.

### 3. Evidence of Defendant Jackson's Prior Conviction

Defendant Jackson next asserts that his right to a fair trial was violated by the Court's admission into evidence of his 2006 guilty plea for bank fraud in the Western District of Pennsylvania.

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second "Circuit 'follows the inclusionary approach, which admits all other act evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402.'" *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013) (quoting *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011)). In determining the admissibility of

14

evidence under Rule 404(b), a district court must consider whether: (1) the prior crimes evidence is "'offered for a proper purpose'"; (2) the evidence is "relevant to a disputed issue"; (3) the probative value of the evidence is "substantially outweighed by its potential for unfair prejudice pursuant to Rule 403"; and (4) the effectiveness of an appropriate limiting instruction. *Id.* (quoting *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009)).

Defendant Jackson argues now, as he argued before trial, that the evidence of his prior conviction was unfairly prejudicial because, regardless of curative instructions, it "clearly planted in the jury's minds" the idea that "if Defendant Jackson committed fraud before, then he probably did it here." (Jackson Mot. for New Trial at 5.) The Court disagrees.

The evidence was offered for the proper purpose of demonstrating that Mr. Jackson understood what he was doing when he took clients' fees and failed to return them; that contrary to his claims, he had the capacity to understand the types of transactions he was entering into; and that he was not acting in good faith. The evidence was relevant for these purposes, and the Court does not believe that the probative value of the evidence was substantially outweighed by its potential for unfair prejudice. The Court carefully instructed the jury both when the evidence was admitted and at the close of trial:

> You are specifically instructed that you may not consider the fact of Mr. Jackson's prior conviction as any evidence of his guilt of any of the charges in this case or as evidence that he has bad character or has a propensity to commit crime. Additionally, you may not consider the evidence of Mr. Jackson's prior conviction to conclude that because he previously committed bank fraud, he must have also committed the acts charged in the Indictment.

15

As the Government notes, once Mr. Jackson testified, the evidence of his prior conviction was also admissible under Federal Rule of Evidence 609(a)(2) on the issue of Mr. Jacksons' truthfulness. For that reason, the Court instructed the jury:

> You have heard testimony that Defendant David Jackson . . . [was] previously convicted of [a] felon[y]. The fact that Mr. Jackson . . . [is a] convicted felon[] may be considered by you in in deciding how much of [his] testimony to accept and what weight, if any, to give it.

The Court is not persuaded that these limiting instructions were insufficient to cure prejudice that may have resulted from the admission into evidence of Mr. Jackson's prior conviction.

### 4. Defendant Jackson's Tax Records

Finally, Defendant Jackson contends that the admission of his 2010–2013 tax records denied him a fair trial. The Court granted in part and denied in part Mr. Jackson's motion in limine seeking to preclude the tax records on September 24, 2015, permitting the admission of the 2010–2013 records but not permitting the introduction of the 2014 tax records. The Court reasoned that Mr. Jackson's tax records (which showed no declared income) were relevant to demonstrate consciousness of guilt, particularly in light of Mr. Jackson's good faith defense.

The Court's decision was consistent with existing authority both within and outside this Circuit. *See, e.g., United States v. Black*, No. 13cr316 (DLI), 2014 WL 5783067, at *5 (E.D.N.Y. Nov. 5, 2014) ("[E]vidence of the defendant's failure to report significant sums of money in his tax filings is admissible under Rule 404(b) as evidence of the defendant's knowledge that the money was the proceeds of illegal activity."); *United States v. Hatfield*, 685 F. Supp. 2d 320, 324 (E.D.N.Y. 2010) ("If, as Defendants claim, they

16

were legally entitled to all the compensation they received from DHB, they would have reported this compensation as income to the IRS. The fact that they allegedly did not demonstrates the Defendants' consciousness of guilt."); *United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005) ("[T]he fact that Handel did not include all of his income [in his tax returns] suggests that he had knowledge of the fraudulent scheme.").

Nonetheless, Mr. Jackson now argues that his tax records were not relevant to his consciousness of guilt because some legitimate businesses, such as "non-profit businesses" and "for-profit businesses that make no income" do not file tax returns. (Jackson Mot. for New Trial at 6.) However, as the Government notes in its Opposition, "the evidence at trial was that Jackson and his entities—ACH and Jalin—*did* make money in both commitment/application fees and collateral fees." (Gov't's Opp'n at 36.) In light of that evidence and in light of Mr. Jackson's contention that he acted in good faith, the Court finds that his tax returns were relevant to consciousness of guilt.

Moreover, the Court specifically instructed the jury regarding how it was to use the tax return evidence, stating:

> You heard and saw evidence about the status of each defendant's tax returns, which the Government offered for the purpose of showing consciousness of guilt, intent, and absence of mistake. Please understand that neither Mr. Jackson nor Mr. Hurt has been charged with any tax-related crime, nor are they on trial for committing any act not alleged in the Indictment.

There is no reason to conclude the jury was improperly prejudiced by the admission of Mr. Jackson's tax records for this limited purpose, or that the tax records prevented Mr. Jackson from receiving a fair trial.

Because neither Defendant has demonstrated that there is a real concern that an innocent man may have been convicted, a new trial is not warranted.

**IV.     Conclusion**

For the foregoing reasons, Defendant Hurt's Motion [Doc. # 165] for New Trial is DENIED; Defendant Jackson's Motion [Doc. # 163] for Judgment of Acquittal is DENIED; and Defendant Jackson's Motion [Doc. # 166] for New Trial is DENIED.

IT IS SO ORDERED.
    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of January, 2016.